**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| CHARLES JUSTIN ROGERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 5:18-cv-01341-JHE |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**[1]

Plaintiff Charles Justin Rogers ("Rogers") seeks review, pursuant to 42 U.S.C. § 405(g), §

205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security

Administration ("Commissioner"), denying his application for child's insurance benefits and

Supplemental Security Income ("SSI"). (Doc. 1).  Rogers timely pursued and exhausted his

administrative remedies.  This case is therefore ripe for review under 42 U.S.C. § 405(g). The

undersigned has carefully considered the record and, for the reasons stated below, the

Commissioner's decision is **AFFIRMED.**

## I.  Factual and Procedural History

Rogers protectively filed applications for child's insurance benefits and SSI on August 3,

2015, alleging he became disabled on October 29, 2014.  (Tr. 88, 154-60).  The agency initially

denied Rogers's application, and Rogers requested a hearing before an Administrative Law Judge

("ALJ").  (Tr. 76, 88, 97-98).   The ALJ held a hearing on July 25, 2017, and subsequently denied

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil
Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge
conduct any and all proceedings, including trial and the entry of final judgment.  (Doc. 16).

1

Rogers' claim on September 8, 2017.  (Tr. 8-21, 45-64).  Rogers sought review by the Appeals Council, but it denied his request for review on June 21, 2018.  (Tr. 1-7).  On that date, the ALJ's decision became the final decision of the Commissioner.  On August 20, 2018, Rogers initiated this action. (*See* doc. 1).

Rogers was twenty-one on the date of the ALJ's decision.  (Tr. 21, 173).  Rogers has no past work and, although he completed the twelfth grade, he has not taken the graduation examination.  (Tr. 49, 57, 179).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This Court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528,

_____

[2] In general, the legal standards applied are the same whether a claimant seeks disability insurance benefits ("DIB") or SSI.  However, separate, parallel statutes and regulations exist for DIB and SSI claims.  Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates.  The same applies to citations for statutes or regulations found in quoted court decisions.

531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)     whether the claimant is currently employed;
(2)     whether the claimant has a severe impairment;
(3)     whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4)     whether the claimant can perform his or her past work; and
(5)     whether the claimant is capable of performing any work in the national economy.

---

[3] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

### IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Rogers had not attained the age of twenty-two as of his alleged onset date of October 29, 2014,[4] and had not engaged in substantial gainful activity since that date. (Tr. 14). At Step Two, the ALJ found Rogers has the following severe impairment: an anxiety disorder. (Tr. 14). At Step Three, the ALJ found that, through his alleged onset date, Rogers did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 14-16).

Before proceeding to Step Four, the ALJ determined Rogers's residual functioning capacity ("RFC"), which is the most a claimant can do despite his impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined Rogers had the RFC

---

[4] Among other qualifications, child's insurance benefits are available to a person who "is under a disability (as defined in section 423(d) of this title) which began before he attained the age of twenty-two . . . ." 42 U.S.C. § 402(d)(1)(B).

to perform a full range of work at all exertional levels but with the following nonexertional limitations: able to understand, remember, and apply simple instructions and tasks; limited to jobs involving infrequent well explained work place changes; limited to casual/non-intensive interaction with coworkers and the general public; and able to concentrate and remain on task for two hours, sufficient to complete an eight-hour workday.

(Tr. 16).

At Step Four, the ALJ determined that Rogers had no past relevant work. (Tr. 19). At Step Five, the ALJ found that, based on Rogers's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy that Rogers could perform: specifically, a janitor cleaner, a warehouse worker, and a laundry worker. (Tr. 20). Therefore, the ALJ determined Rogers has not been under a disability and denied his claim. (Tr. 20-21).

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or if improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Rogers raises four issues.[5] First, Rogers contends the ALJ failed to provide a fair, non-adversarial hearing and was biased against him. (Doc. 12-1 at 6-12). Next, Rogers argues the ALJ

---

[5] Rogers also includes two brief notations in footnotes indicating other errors by the ALJ. Both are entirely undeveloped, and neither would warrant remand in any case. The first is a truncated sentence indicating the ALJ erred, apparently by failing to find impairments other than an anxiety disorder severe at Step Two. (Doc. 12-1 at 4 n.1). Step Two is "a 'filter' requiring the denial of any disability claim where no severe impairment or combination of impairments is present. *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 950 (11th Cir. 2014) (citing

cherry-picked from the medical opinions of record and failed to justify rejecting limitations imposed in those opinions.  (*Id.* at 12-13).  Third, Rogers claims the vocational expert ("VE") consulted by the ALJ offered testimony inconsistent with the Dictionary of Occupational Titles ("DOT").  (*Id.* at 13-14).  Finally, Rogers argues the ALJ misinterpreted the evidence and reached erroneous conclusions based on that interpretation.  (*Id.* at 14-16).  Each of these issues is discussed below.

### A.  The ALJ Did Not Deprive Rogers of a Fair Hearing

A claimant is entitled to a hearing that is both full and fair. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (citation omitted). This principle is embodied in the Social Security Administration's regulations, which require an ALJ to recuse herself from a hearing "if . . . she is prejudiced or partial with respect to any party or has any interest in the matter pending for decision." 20 C.F.R. § 404.940.

The court starts from the presumption that an ALJ is unbiased and acts with honesty and integrity. *Schweiker v. McClure*, 456 U.S. 188, 195 (1982); *Withrow v. Larkin*, 421 U.S. 35, 47 (1975). "This presumption can be rebutted by a showing of conflict of interest or some other specific reason for disqualification," and the burden to do so is on the party asserting bias. *McClure*, 456 U.S. at 195. Specifically, the party must show convincing evidence that "a risk of actual bias or prejudgment" is present. *Withrow*, 421 U.S. at 47. "[J]udicial rulings, routine trial administration efforts, and ordinary admonishments (whether or not legally

---

*Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)).  If an ALJ finds at least one severe impairment (as she did here), the analysis proceeds, and the ALJ subsequently considers the effects of each of the claimant's impairments, listed or not.  *Id.* (citing *Jamison*, 814 F.2d at 588).

The second footnote disputes that Rogers had, as the ALJ indicated in her opinion, at least a high school education.  (Doc. 12-1 at 7 n.2).  It is true that Rogers did not take the graduation exam (as the ALJ noted at the hearing, (tr. 49)), but Rogers does not indicate in any way how the ALJ's erroneous finding impacted the outcome of his case.

supportable) to counsel and to witnesses . . . [which] neither (1) rel[y] upon knowledge acquired outside [the] proceedings nor (2) display[ ] deep-seated and unequivocal antagonism that would render fair judgment impossible," are inadequate to require disqualification. *Liteky v. United States*, 510 U.S. 540, 556 (1994). And when a claimant alleges he was deprived of the right to a fair hearing, "there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [Commissioner] for further development of the record." *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997).

Rogers' brings up four data points he says demonstrate the ALJ's bias. The first of these is the ALJ's handling of updated medical records presented at the hearing. The ALJ initially took issue with a batch of records submitted by Rogers' counsel because she did not receive them within five business days of the hearing, as required by the National Uniformity Rule.[6] (Tr. 48). Rogers argues the ALJ was incorrect in concluding the records were not timely submitted, but concedes that the ALJ "did change her stand on these records by the end of the hearing . . . ." (Doc. 12-1 at 7-8). Instead of alleging error based on this (which he could not reasonably do, given the absence of any prejudice to him), Rogers offers it for the proposition that it "exemplifies the ALJ's adversarial approach to the hearing and [his] case as a whole." (*Id.* at 8). But the ALJ's decision to admit the records despite her belief (erroneous or not) that they had not been timely submitted undercuts Rogers' claims. To the extent that the ALJ was brusque, "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their

_____

[6] *See* "Ensuring Program Uniformity at the Hearing and Appeals Council Levels of the Administrative Review Process," 81 FR 90987-01, 2016 WL 7242991.

cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994) (emphasis in original). Even accepting Rogers' characterization, "expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women . . . sometimes display" do not establish bias or undermine the fairness of the hearing. *Martinez v. Acting Comm'r of Soc. Sec.*, 660 F. App'x 787, 794 (11th Cir. 2016) (quoting *Liteky*, 510 U.S. at 555). *See also Dube v. Astrue*, No. 3:09CV99/LAC/EMT, 2010 WL 1257651, at *14 (N.D. Fla. Feb. 25, 2010), *report and recommendation adopted*, No. 3:09CV99/LAC/EMT, 2010 WL 1257650 (N.D. Fla. Mar. 26, 2010) ("needlessly abrupt" questioning by ALJ, while not condoned by the court, does not warrant reversal); *Swann v. Astrue*, No. 3:07CV129/LAC/EMT, 2008 WL 818500, at *13 n.8 (N.D. Fla. Mar. 26, 2008) (ALJ's "rhetorical questions, debates, and sarcasm" did not require reversal). For the same reason, Rogers' contention that the ALJ was "accusatory" throughout the hearing—his third data point, (*see* doc. 12-1 at 11)—cannot support reversal either.

Rogers' other two examples go more to substance than tone. Rogers argues the ALJ rendered the hearing unfair by refusing to allow counsel to call Rogers' mother as a witness at the hearing. (Doc. 12-1 at 8-9). He points to the following exchange between the ALJ and counsel:

> ATTY: Your Honor, I'm not trying to interrupt but I thought that the Court Reporter had mentioned that I wanted to have Mr. Rogers['] mother testify.

> ALJ: Had you told me in advance we could have rescheduled this case for a time when I didn't have eight hearings but you did not notify me that there would be any witnesses so she didn't send in her -- whatever she was planning on testifying to within the next five days.

(Tr. 57). The ALJ then moved directly into testimony from the VE. (Tr. 57).

When a claimant alleges remand is necessary because of an ALJ's failure to develop the record (e.g., through denying witness testimony), the court looks to "whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'" *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995). Although Rogers states his mother's testimony would have been helpful for the ALJ to make a credibility assessment, (doc. 12-1 at 8), the fact of the matter is that the record contains a function report from Rogers' mother, (tr. 186-193). Rogers does not indicate that his mother would have provided any new information at the hearing, so he has also not shown how the ALJ's refusal to hear her testimony created an evidentiary gap. Accordingly, Rogers cannot show this resulted in prejudice warranting remand.

Finally, Rogers points to a line of questioning the ALJ pursued regarding Rogers' counseling:

Q: Why did you only go to Healing Waters Counseling two times?

A: I couldn't afford to go any longer.

Q: Did you ask them for any type of charity care or sliding scale because you didn't have income?

A: I believe we asked them for sliding scale but still couldn't afford to go.

Q: How much did it cost?

A: I'm not certain. My mother and my father, they manage all that stuff.

Q: Well don't you -- weren't you getting a check or are you still getting a check from your father who's disabled?

A: I'm not getting it any longer. I don't remember when I stopped getting it. It's been a few years now.

Q: So have you applied anywhere else for charity care to get therapy?

A: No, ma'am.

Q: Why not?

A: There's nowhere close to where I live.

Q: How do you know that?

A: I believe the Healing Waters was the closest that we could find.

(Tr. 50-51).  Rogers contends this was improper, and later used to discredit his allegations.  (Doc. 12-1 at 9-10).  Whether the ALJ properly evaluated Rogers' lack of treatment is discussed further below, but this was not an improper line of questioning by the ALJ.  In fact, an ALJ is sometimes *obligated* to investigate whether a claimant who fails to seek treatment could afford it.  *See Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) ("[W]hen an ALJ relies on noncompliance as the sole ground for the denial of disability benefits, and the record contains evidence showing that the claimant is financially unable to comply with prescribed treatment, the ALJ is required to determine whether the claimant was able to afford the prescribed treatment.").  Accordingly, the ALJ was entitled, if not required, to develop the record by seeking an explanation from Rogers for his lack of treatment.  Although Rogers again appears to take issue with the ALJ's tone, that is not a basis for reversal.  And since Rogers has not shown anything that would have deprived him of a full and fair hearing, including bias by the ALJ, remand is unwarranted on this basis.

### B.  The ALJ Adequately Evaluated Dr. Estock's Opinion

Rogers' second argument is that the ALJ cherry-picked portions of the opinion of Dr. Robert Estock, a state agency consultative examiner.[7]  (Doc. 12-1 at 11-13).  When determining the weight given to a physician's opinion, an ALJ considers numerous factors, including whether the physician examined the claimant, whether the physician treated the claimant, the evidence the physician presents to support his or her opinion, whether the physician's opinion is consistent with the record as a whole, and the physician's specialty. *See* 20 C.F.R. § 404.1527(c). An ALJ may

---

[7] Rogers' subheading indicates that the "ALJ erred in evaluating the medical opinions of record," but Dr. Estock's is the only one Rogers discusses.  (*See* doc. 12-1 at 11-13).

discount a physician's opinion when the opinion is conclusory, the physician fails to provide objective medical evidence to support his or her opinion, the opinion is inconsistent with the record as a whole, or the evidence otherwise supports a contrary finding. *See id.*

Here, the ALJ gave "great weight to [Dr. Estock's] opinion only to the extent that the claimant has moderate difficulties in maintaining social functioning." (Tr. 19). However, the ALJ rejected Dr. Estock's conclusion Rogers had "moderate difficulties in maintaining concentration, persistence or pace," referring back to her evaluation at Step Two. (Tr. 19). At that step, the ALJ found Rogers had no limitation. (Tr. 15). There, the ALJ referred to an examination by Dr. Mary Arnold in June 2015 showing Rogers was fully alert and oriented in all spheres, with goal-directed thought process, normal abstract reasoning, and intact judgment and insight. (Tr. 15, 263-66). The ALJ found Rogers' hobbies and interests, which included playing music, watching television, and playing video games, undermined his contention that his alleged impairments affected his concentration. (Tr. 15). Specifically, she stated: "playing video games requires the ability to be responsive to instructions, and to navigate through the complexities of each level in order to achieve a specific goal and win the game." (Tr. 15).

Although mostly agreeing with the non-exertional limitations suggested by Dr. Estock, the ALJ gave some specific restrictions limited weight. (Tr. 19). These included Dr. Estock's recommendations that Rogers "would function best with his own work area/station without close proximity to others; would benefit from regular rest breaks and a slowed pace; criticism or feedback should be supportive, tactful, and non-confrontational; and [Rogers] would work best in small group of coworkers." (Tr. 19, 83-85). The ALJ found these were "superfluous and . . . constitute the perfect work environment." (Tr. 19).

Underlying Rogers' argument is the implication that the ALJ was required to defer to Dr. Estock's opinion. But Dr. Estock was a one-time consultative examiner, so his opinion was not due any particular deference. *See Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004) (finding one-time examiner's opinion "was not entitled to great weight"). Further, the ALJ was not required to accept Dr. Estock's opinion in total or not at all. *See Hand v. Soc. Sec. Admin., Comm'r*, 786 F. App'x 220, 225 (11th Cir. 2019) (noting "[a] medical source can provide multiple statements regarding a claimant's impairments, and the weight to be afforded each of a medical source's opinions may differ based on the factors set forth in § 404.1527(c)."). It was not error in and of itself for the ALJ to decline to afford Dr. Estock's opinion controlling weight or to accept only parts of it.

In any case, the ALJ adequately explained her rationale for discounting portions of Dr. Estock's opinion. As to Dr. Estock's opinion regarding Rogers' limitations in concentration, persistence, and pace, as discussed above, the ALJ pointed back to other evidence contradicting that finding: a permissible reason to discount an opinion. *See* 20 C.F.R. § 404.1527(c). The ALJ's disposition of some limitations in Dr. Estock's RFC was also well-founded. Each of the limitations the ALJ rejected described the best possible working environment for Rogers, which is not Rogers' RFC. Instead, as noted above, RFC is the most a claimant can still do despite his physical and mental limitations. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a). In other words, it might be helpful to Rogers to work in an environment with, *e.g.*, a slow pace, but, even by the terms of Dr. Estock's opinion, it would not be necessary; instead, Dr. Estock found Rogers could perform at an "acceptably consistent" pace, (tr. 85). Although Rogers generally states the limitations in Dr. Estock's RFC were "supported by the evidence," he does not point to any that contradicts the ALJ's finding the evidence did *not* support such limitations. On the contrary, the ALJ's decision

to credit parts of Dr. Estock's opinion was supported by substantial evidence and cannot support remand.

### C. Any Error in the Vocational Examiner's Testimony Was Harmless

Rogers' third challenge is to the ALJ's reliance on VE testimony he says was inconsistent with the DOT. A VE's testimony can constitute substantial evidence supporting the ALJ's decision when the ALJ poses "a hypothetical question which comprises all of the claimant's impairments." *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). Under the relevant regulations, "[o]ccupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT." *Policy Interpretation Ruling : Titles II & Xvi: Use of Vocational Expert & Vocational Specialist Evidence, & Other Reliable Occupational Info. in Disability Decisions*, SSR 00-4P (S.S.A. Dec. 4, 2000). An ALJ must resolve conflicts between the VE's testimony and the DOT before relying on the inconsistent evidence. *Id*.

The ALJ posed three hypothetical questions to the VE. In response to the first, which included many of the limitations imposed in the RFC, the VE identified three jobs Rogers could perform: janitor/cleaner, warehouse worker, and laundry worker. (Tr. 58). In response to the second, which included an additional restriction and formed the basis for the RFC, the VE stated Rogers could perform the same three jobs. (Tr. 58-59). The third hypothetical question included the restriction that Rogers "would need to avoid all interaction with coworkers and the general public," which does not appear in the RFC. In response to that question, the VE indicated that Rogers could perform a surveillance camera monitor job, DOT 379.367-010. (Tr. 59). Rogers challenges that this job would have been available to Rogers, arguing the DOT definition of "surveillance camera monitor" does not match the VE's description of the position. (Doc. 12-1 at 13-14).

As the Commissioner points out, (doc. 14 at 13), the ALJ did not rely on the limitations in the hypothetical that elicited the response Rogers challenges. Rogers argues that the VE's error calls into question the remainder of her testimony, but he cites no authority for this proposition, nor does he point to any discrepancies between the DOT and the VE's testimony regarding the three jobs responsive to the ALJ's second hypothetical—the one on which she ultimately relied, (tr. 20). Because the ALJ did not rely on the third hypothetical, SSR 00-4p did not require her to resolve conflicts between the VE's testimony regarding the surveillance camera monitor job and the DOT description of that job.[8] And even if it were erroneous for the ALJ to fail to account for that conflict, it was harmless error given that it did not impact her opinion.

Rogers also argues the VE's error was compounded by the fact that the ALJ did not specifically ask counsel if counsel had "any objections or issues with the VE's qualifications or ability to testify as a vocational expert in Mr. Roger's case." (Doc. 12-1 at 14). Leaving aside that compounding a harmless error does not change the error's harmlessness, Rogers' counsel had an opportunity to examine the VE, and he took full advantage of that opportunity. (Tr. 60-62). Rogers' counsel could have raised any objections or issues with the VE's qualifications at that time, but he declined to do so. Furthermore, Rogers does not *now* identify any such issues or objections, so he has not demonstrated any prejudice from the ALJ's failure to specifically ask counsel if he had any. Accordingly, Rogers has not shown the ALJ's reliance on the VE's testimony warrants remand.

---

[8] The only conflict Rogers identifies between the VE's description of the surveillance camera monitor job is the location. The VE stated the job would be performed in an isolated room in "any kind of business," while the DOT cites indicates the job involves monitoring the premises of "public transportation terminals" on closed-circuit television camera monitors. (Doc. 12-1 at 15) (citing https://occupationalinfo.org/37/379367010.html). Rogers points to no reason why the difference in locations would impact the skills required to perform the job.

### D. The ALJ's Allegedly Erroneous Factual Representations and Conclusions Are Not Reversible Error

Rogers' final allegation of error sets out three allegedly incorrect factual representations and conclusions in the ALJ's decision, arguing the ALJ's decision lacks substantial evidence as a result of her reliance on them. (Doc. 12-1 at 14-16).

First, Rogers contends the ALJ improperly considered his failure to return to Healing Waters for additional counseling after two visits as evidence his symptoms were "stable and well controlled." (Doc. 12-1 at 14) (citing tr. 18). As discussed above, Rogers argues the ALJ did not take into account his explanation that he did not return to Healing Waters due to his inability to afford treatment. (*Id.*). But the ALJ considered Rogers' lack of treatment at Healing Waters as the culmination of a recap of Rogers' overall treatment for his anxiety disorder. This included Rogers' psychological examination with Dr. Arnold, in which Dr. Arnold found only mild anxiety, with no overt indicator of panic attack, and otherwise generally ordinary mental findings. (Tr. 17). The ALJ also found Rogers' treatment records at Northeast Alabama Health Services indicated he was doing well on medication through 2017, with frequent denials of anxiety and notations in the record that Rogers' symptoms were "well controlled on lithium." (Tr. 18, 338, 346-47). Only after noting this evidence did the ALJ move on to Rogers' treatment at Healing Waters. Rogers ignores the beginning portion of the paragraph he quotes from the ALJ's decision, in which the ALJ cites the notes from Rogers' last visit to Healing Waters on December 16, 2015. According to those notes, Rogers indicated "Meds are fine / things are fine." (Tr. 18) (citing tr. 311). Rogers also indicated at that visit that "[h]is meds have evened him out." (Tr. 311). Based on the lack of counseling *in addition to* the medical evidence cited above, the ALJ concluded Rogers' anxiety disorder was well-controlled.

Even if the ALJ failed to consider Rogers' inability to afford treatment at Healing Waters, she did not rely exclusively—or even primarily—on his failure to seek treatment. An ALJ does not commit reversible error by failing to consider the financial reasons for a claimant's noncompliance when her finding that a claimant is not disabled is "not significantly based on a finding of noncompliance." *Ellison*, 355 F.3d at 1275. *See also Bellew v. Acting Comm'r of Soc. Sec.*, 605 F. App'x 917, 921 (11th Cir. 2015) (same). Accordingly, any error by the ALJ in evaluating Rogers' noncompliance was not reversible error.

Next, Rogers points to the ALJ's conclusion that "the claimant has never worked, which raises some questions as to whether the current unemployment is truly the result of medical problems." (Doc. 12-1 at 14-15) (citing tr. 18). Rogers argues his young age—18 at his onset date—and home schooling paint a different picture of his employment history. (*Id.* at 15). But Rogers does not indicate why it was improper for the ALJ to "consider all of the evidence presented, including information about [his] prior work record," as she was required to do by 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3). Instead, he states "it is much more likely that Mr. Rogers' lack of work is due to his disabling impairments rather than some other lack of desire to work." (Doc. 12-1 at 15). In other words, Rogers asks the court to reweigh the evidence, which is outside the scope of the court's review of the Commissioner's decision. *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner."). Although it is certainly possible to reach the conclusion Rogers advances, it is by no means the only permissible conclusion. This is not reversible error.

Finally, Rogers argues the ALJ improperly considered his activities of daily living in determining that he could perform a limited range of unskilled work. (Doc. 12-1 at 15). The ALJ

found Rogers "engage[d] in a wide range of daily activities including household chores, shopping, paying bills, navigating the internet, and playing video games," which she found to be "consistent with unskilled work." (Tr. 18). Rogers contends nearly all of these activities are performed at home, which does not conflict with a disability centered on anxiety and agoraphobia. (Doc. 12-1 at 15). Rogers also disputes the ALJ's characterization of shopping and paying bills, noting that in the evidence the ALJ cites in support of this (notes from Dr. Arnold's consultative psychological evaluation) Rogers stated he only helped his father with paying bills and occasionally bought groceries in Trenton, which necessarily would have been with a parent since Rogers does not have a driver license. (Doc. 12-1 at 15 (citing tr. 266, 54-57, 189-92, 194-200).

At the outset, an ALJ is entitled to consider a claimant's daily activities at Step Four, as she did here. *See Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987) (citing 20 C.F.R. § 404.1520(e)). To the extent Rogers objects to the ALJ's decision to consider his daily activities in support of her determination that he could perform unskilled work, his objections are unfounded. As to Rogers' argument the ALJ misstated the evidence by omitting its context, even if Rogers shopped for groceries and paid bills under the supervision of his parents, these activities are still consistent with unskilled work: "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. §§ 404.1568(a), 416.968(a). Any omission by the ALJ does not undermine the conclusion that Rogers' activities of daily living support his ability to perform unskilled work consistent with the RFC. Accordingly, the ALJ did not commit reversible error in relying on them.

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying

Rogers's claim for child's insurance benefits and DIB is **AFFIRMED**, and this action is **DISMISSED WITH PREJUDICE**. A separate order will be entered.

DONE this 16th day of March, 2020.

_____

**JOHN H. ENGLAND, III**

UNITED STATES MAGISTRATE JUDGE